UNITED ADVERTISING CORPORATION, A CORPORATION OF NEW JERSEY, PROSECUTOR, v. THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MAPLEWOOD, DEFENDANT.

Submitted October 7, 1947—Decided December 30, 1947.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor, *Lum, Fairlie & Foster* (*John S. Foster,* of counsel).

For the defendant, *Osborne, Cornish & Scheck* (*Abram H. Cornish* and *A. Harrison Cornish, Jr.,* of counsel).

The opinion of the court was delivered by

EASTWOOD, J. This is a zoning case. The present writ of *certiorari* brings up for review the determination of the Board of Adjustment of the Township of Maplewood in the County of Essex denying the application of the prosecutor for permission to erect two outdoor advertising billboard signs on

its lot, situate at the southwest corner of Springfield Avenue and Vermont Street, in the Township of Maplewood and known as 1665-1667 Springfield Avenue, Maplewood, New Jersey, and further designated on the tax maps of Maplewood as lots 1 and 2 of plate 49.

Prosecutor acquired the land in question in the year 1932 prior to the enactment of the Zoning Ordinance under review, and is engaged in the business of renting advertising space on outdoor billboards owned by it. On March 6th, 1947, application was made by the prosecutor to the building inspector of the Township of Maplewood for permission to erect two 11 feet by 25 feet signs upon the premises and was advised by letter from the building inspector, on March 7th, 1947, that his office would not issue the requested permit on the ground that the zoning ordinance of the township did not permit the issuance of building permits for signs of the billboard type in the business zones. An appeal was taken to the Board of Adjustment. It is from an adverse disposition made by the Board of Adjustment that the prosecutor brings the present writ. The zoning ordinance in question was adopted by the Township Committee of the Township of Maplewood on March 20th, 1934, and was subsequently amended, in particulars not pertinent to the issue, on July 16th, 1940. Prosecutor's lot is concededly within a district zoned for business purposes. Section 9 of the ordinance, pertaining to business districts provides, *inter alia:* "1. In the business districts no building, structure or premises shall be used and no building, structure or alteration, enlargement or extension of the same shall be constructed unless designed, arranged or intended to be used exclusively for one or more of the following purposes:

"a. Any use permitted in a single residence, two family or a general residence district."

Section 9 then continues with a specification and enumeration of various types of businesses, trades, &c., permitted to be carried on in business districts, none of which are pertinent here.

It will thus be seen that in so far as the provisions of the zoning ordinance, relating to business districts are concerned,

the construction and maintenance of billboard signs is prohibited by reason of the omission of such signs from the spefically enumerated uses sanctioned. This is so unless the ordinance in other respects makes some specific reference to billboard signs. Section 6, pertaining to one-family residence districts, provides:

"1. In all one family residence districts, no building, structure, or premises shall be used and no building or structure or alteration, enlargement or extension of the same shall be constructed unless designed, arranged or intended to be used exclusively for one or more of the following purposes:

\* \* \* \* \* \* \*

"j. Accessories shall not be deemed to include billboards or other advertising signs, except that which shall be permitted.

"On a residence signs bearing the name and designation of any occupation lawfully carried on in such residence by any person residing therein, any such sign not to exceed one square foot in area.

"Real estate signs advertising as for sale or for rent the property upon which they are displayed.

"On other buildings signs customarily and necessary incident to the use to which the buildings are lawfully put."

The testimony before the Board of Adjustment on the part of the witness George E. Wendel, vice-president of the prosecutor, established that it had been unable to utilize the vacant land for any purpose whatever; that the proposed signs would be entirely of steel and would comply with the building code of the township; that the signs would be placed diagonally and would be visible only to pedestrian and vehicular traffic traveling west on Springfield Avenue or turning south into Vermont Street; that the signs would be illuminated nightly from sunset to midnight; and that prosecutor had been issued a permit by the State of New Jersey for two such signs at the location in question. The building inspector, Frederick W. Barbehenn, testified that there were a total of twenty-seven advertising signs of the billboard or panel poster type located on eighteen pieces of property in the township; that all of these signs, with the exception of one at 2000 Spring-

field Avenue, were either replacements of signs that were non-conforming, or were non-conforming signs in existence before the passage of the zoning ordinance. It was further established that Springfield Avenue is the main business thoroughfare of Maplewood Township; that it runs in a general easterly-westerly direction; and that there is an automatic traffic light at the intersection of Springfield Avenue and Vermont Street. Pedestrian and vehicular traffic on Springfield Avenue is such as is usually found in urban communities of this type. The testimony and photographic exhibits reveal that in the immediate vicinity of the *locus in quo,* there are located numerous business establishments and a gasoline station, nearly all of which announce their wares and services by means of the usual business advertising signs. On the wall of the building immediately adjacent to prosecutor's lot there is a large painted sign advertising the services of a title insurance company. We have gone at length into a description of the general business character of the neighborhood for the purpose of pointing out that prosecutor's lot is for all practical purposes located in an area devoted exclusively to business purposes. We now proceed to a consideration of the meritorious issues involved.

It is said on behalf of the prosecutor that the limitation of signs for advertising purposes to those which are necessarily and customarily incident to business conducted in the building to which such signs are accessory, creates a hardship in the case of an owner who has no need for a building, and that the hardship so created is not necessary for the effective operation of the zoning plan. It is further urged upon us that the court should also consider that outdoor advertising is a proper and recognized business; that the maintenance of signs involves no noise, odor, smoke or other objectionable characteristics; that it does not involve a concentration of population, nor the attraction of customers to come and do business; that the nature of the business is such that the erection of buildings is not required for its conduct; and that the operation of the zoning ordinance is such that the prosecutor is thereby deprived of the opportunity to conduct a perfectly respectable and unobjectionable business in the only zone

where it is most appropriate simply because "business," as defined in the zoning ordinance, contemplates the more ordinary concept of a retail or wholesale store or shop, or an office of a professional business man or firm. We are asked, therefore, to set aside the determination of the Board of Adjustment in denying prosecutor's application on the ground that it acted arbitrarily and beyond the scope of its *quasi*-judicial function. On the other hand, we are told that the municipality, acting under its zoning powers, may so regulate the use of property for the purpose of preventing congestion, fire, panic and similar risks; to protect the health, morals or general welfare; to provide for light and air; to prevent the overcrowding of land and buildings or the concentration of population; and may regulate and restrict property uses under the authority of the zoning laws and the Constitutional Amendment of 1927; to conserve the value of property and encourage the most effective use of land throughout the municipality. It is said that the erection of the proposed billboard signs at Springfield Avenue and Vermont Street would attract the attention of motorists and other travelers upon the street and that such signs would literally thrust a message before the traveler, be he motorist or pedestrian, and thus inevitably draw his attention away from the operation of his vehicle and the hazards of traffic. It is further urged that billboard signs are potential nuisances and their existence is ofttimes accompanied by the accumulation of debris behind and around them; may increase fire hazards and produce unsanitary conditions; that behind them nuisances and immoral acts are often committed, and that they may serve as places of concealment for criminals. In short, the defendant Board of Adjustment takes a position that the zoning ordinance represents a valid exercise of municipal regulation under its general police powers and such powers as are specifically granted under the Zoning Act, *R. S.* 40:55–30, *et seq.*, and the Constitutional Zoning Amendment of 1927 (New Jersey Constitution, article 4, section 6, paragraph 5).

We have carefully considered the testimony below and the able arguments of counsel for the respective parties and are of the opinion that the action of the Board of Adjustment,

in denying prosecutor's application, was arbitrary and capricious. It is true that there is a presumption that a zoning ordinance is reasonable in its application and that there rests upon the landowner the burden of establishing circumstances justifying a variance from the general rule of the ordinance. *Fonda* v. *O'Donohue,* 109 *N. J. L.* 584; 163 *Atl. Rep.* 2; *Cook* v. *Board of Adjustment of Trenton,* 118 *N. J. L.* 372; 193 *Atl. Rep.* 191. It is established in this state that the jurisdiction of a board of adjustment to make exceptions to the general provisions of the regulatory ordinance, is to be exercised only where there exist such special conditions that a literal enforcement thereof would result in unnecessary hardship. On the other hand, as stated by Mr. Justice Heher, speaking for this court in *Brandon* v. *Montclair,* 124 *N. J. L.* 135; 11 *Atl. Rep.* (*2d*) 304; *affirmed,* 125 *N. J. L.* 367; 15 *Atl. Rep.* (*2d*) 598:

"Use restrictions upon real property must find their justification in some aspect of the police power, exerted for the public welfare. Unless the particular regulation bears a substantial relation to the public health, safety, morals, comfort, convenience, or the general good and welfare in the proper sense—in this instance, to one or more of the considerations outlined in section 40:55–32 of the Revision, *supra*—it is an invasion of the constitutional right of · private property. *Euclid* v. *Ambler Realty Co.,* 272 *U. S.* 365; 47 *S. Ct.* 114; 71 *L. Ed.* 303; *Nectow* v. *Cambridge,* 277 *U. S.* 183; 48 *S. Ct.* 447; 72 *L. Ed.* 842; *Mansfield & Swett, Inc.,* v. *West Orange,* 120 *N. J. L.* 145. The inquiry is whether the restraint thus put upon property 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' *Purity Extract and Tonic Co.* v. *Lynch,* 226 *U. S.* 192, 204; 33 *S. Ct.* 44; 57 *L. Ed.* 184. * * *"

It is not apparent that the erection of the billboard signs as proposed by the prosecutor, bearing in mind the exclusive business character of the neighborhood and the numerous advertising signs already in existence, will in any way tend to have an adverse effect upon congestion, fire, panic, and similar risks, health, morals or general welfare, light and air, overcrowding of land and buildings, or concentration of popula-

tion, nor do we perceive in what manner the contemplated use will depress property values in the neighborhood or discourage the most effective use of the land in question.

We are of the opinion that the zoning ordinance in question bears no reasonable or substantial relation to the purpose sought to be attained and actually results in an unnecessary and unreasonable restriction upon the use of prosecutor's property and the pursuit of useful activities thereon. As stated by Mr. Justice Heher, in *Brandon* v. *Montclair, supra:*

"It is not within the legislative province so to exercise the power as to preclude the use of the individual property for all purposes to which it is reasonably adapted. The statutory provision for relief against 'unnecessary hardship' ensuing from a 'literal' application of the ordinance was designed to permit reasonable use of the particular property, and thus to guard against an unwarranted interference with the fundamental right of property, *i. e.,* to secure reasonable zoning. * * * The restriction may be so unreasonable in the given case as to be confiscatory; and, in those circumstances, the general rule must be struck down as arbitrary and oppressive."

Zoning ordinances must, perforce, speak in general terms. The result ofttimes is such that special hardship to individual landowners ensues. The proper function of boards of adjustment is, through their power, to grant variances, to give relief from such consequences and thus to forestall and prevent an unwarranted invasion of the right of private property.

We have chosen to rest our decision upon the unreasonable and capricious character of the zoning ordinance in question in so far as it deprives prosecutor of a legitimate use of its property without any reasonable or substantial relation to the public welfare, &c., sought to be attained, and it is, therefore, unnecessary for us to consider the other grounds raised by prosecutor for reversal of the action of the Board of Adjustment.

We have carefully considered all of the other points raised by the defendant in support of its contentions and find them to be without merit.

The action of the Board of Adjustment is accordingly reversed, with costs.