J. S14004/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                        :          PENNSYLVANIA
             v.           :
                        :
SHAWN ANTHONY ARNDT,      :     No. 369 MDA 2015
                        :
          Appellant    :


Appeal from the PCRA Order, January 26, 2015,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0004896-2009


BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J. AND STEVENS, P.J.E.*


MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED APRIL 21, 2016**

Shawn Anthony Arndt appeals from the order of January 26, 2015,

dismissing his PCRA[1] petition.  We affirm.

The facts of this case were set forth in this court's memorandum

opinion of July 18, 2012, affirming the judgment of sentence.

> In 1999, Appellant married A.A., who had a
> son, X.E., with another man, and, afterwards,
> Appellant and A.A. had a daughter together while
> living in York County.  At trial, X.E. testified that in
> 2007, when the victim was fourteen years old,
> Appellant initiated a sexual relationship with him that
> spanned approximately one and one-half years.
> Specifically, on occasions "too many to count," they
> engaged in mutual masturbation where Appellant
> would masturbate the boy and vice versa, until they
> both ejaculated.  N.T. Trial, 8/18-20/10, at 125.  At

---

\* Retired Justice specially assigned to the Superior Court.

[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

some point during this period, Appellant asked X.E. if he could perform fellatio on the boy. X.E. related, "I was reluctant at first, but then he offered me $20, and then I said yeah." *Id*. at 128. Appellant performed oral sex on his stepson numerous times while X.E. performed fellatio on Appellant on three or four occasions. When Appellant asked the boy to engage in anal sex, the victim refused. Appellant displayed pornography during some of the encounters, which occurred both in the computer room and bedroom of their home and in a garage where they worked on a car together. X.E. revealed the sexual abuse after his mother asked him about emails from Appellant to X.E. that she had discovered.

The events surrounding Mrs. A.'s discovery of Appellant's disturbing activity with her son began in June 2009, when Appellant and Mrs. A. were separated due to the fact that she discovered that Appellant had passed bad checks in an attempt to save his ailing business. At that time, members of Mrs. A.'s family showed her sexually explicit emails that Appellant had sent to Mrs. A.'s nephew. After confronting Appellant and obtaining his admission to sending the messages, Mrs. A. went to the home that she had shared with Appellant and took the tower of his personal computer, which he reported to police as stolen. Mrs. A. took the equipment to computer experts who recovered pornographic images as well as emails from Appellant to X.E.

The matter was immediately reported to West Manchester Police, and Detective David Bixler assumed the investigation into Appellant's conduct. On June 24, 2009, Appellant contacted West Manchester Police Officer Matthew Emig to discuss the previously-reported theft of his computer. Police Officer Emig was aware of the ongoing investigation into Appellant's abuse and invited Appellant as well as Detective Bixler to the police station. When Appellant first arrived, he met with Officer Emig. Officer Emig interviewed Appellant about the computer matter in a holding room, and the men

proceeded to a conference room, where they were located when Detective Bixler reached the station.

Upon his arrival, Detective Bixler immediately "advised [Appellant] that there was something that we needed to discuss, and [Appellant] was given his [constitutional] rights in front of Officer Emig," which is an event that Officer Emig confirmed. *Id*. at 147, 166-67. Appellant was asked if "he had been involved in some sexual relations with his son," an allegation that he denied at first. *Id*. at 151. Appellant eventually admitted to all the sexual abuse reported by X.E., including the commission of oral sex. Appellant also "acknowledged that he had asked his son for anal sex. He acknowledged the mutual masturbation. He acknowledged that he had sent sexually explicit text messages to him[.]" *Id*. at 152. Finally, Appellant admitted that he displayed pornography to X.E. Consistent with the testimony proffered by the victim, Appellant told police that the abuse would occur in a garage on Andrews Street where he and the boy worked on a car as well as in the computer room and the boy's bedroom in the family home. Appellant handwrote and executed his confession.

*Commonwealth v. Arndt*, No. 1480 MDA 2011, unpublished memorandum at *1-3 (Pa.Super. filed July 18, 2012), *appeal denied*, 62 A.3d 377 (Pa. 2013).

On August 20, 2010, a jury convicted Appellant of involuntary deviate sexual intercourse ("IDSI")— threat of forcible compulsion, IDSI—person less than sixteen years of age, indecent assault of a person less than sixteen years of age, promoting prostitution, dissemination of explicit sexual materials to a minor, and unlawful contact with a minor. The matter proceeded to sentencing on April 1, 2011, when Appellant received an aggregate sentence of seven to fourteen years imprisonment.

*Arndt*, at *4.

Following Sentencing, [appellant] filed a Post-Sentence Motion on April 11, 2011. [The trial court] Denied [appellant's] Post-Sentence Motion on August 8, 2011 and filed an Opinion in support of the Order. [Appellant] then filed a Notice of Appeal on August 22, 2011. [Appellant] was granted leave to file an appeal **in forma pauperis** and was ordered to file a Statement of Matters Complained of on Appeal. The Court was notified on September 27, 2011, that Frank Arcuri, Esquire, had taken over the case and it ordered Attorney Arcuri to file a new Statement of Matters Complained of on Appeal; [appellant's] Statement was filed on October 26, 2011. Pursuant to the Pennsylvania Rules of Appellate Procedure, Rule 1925(a), this Court entered an Opinion in support of our actions on November 9, 2011. On July 18, 2012, the Superior Court denied Appellant's appeal and on January 30, 2013, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.[Footnote 1]

[Footnote 1] We note that **numerous pro se** letters were filed during the period in which the Appellant's case was on appeal.

The Appellant filed a **pro se** [PCRA] petition on February 19, 2013.

Central to the recitation of the procedural history of this case are the vigorous **pro se** efforts of the Appellant referenced in our earlier note. If there is any verity to the aphorism that the wheels of justice turn slowly then there is equal merit to the notion that the Appellant's ceaseless efforts to short circuit the system and obtain speedier relief than other petitioners has amounted to confusion and subsequent delay to his detriment. In response to his letter-writing and petition-filing campaign, the Appellant received a letter from our Supreme Court, docketed September 16, 2013, informing him that his Motion to Dismiss All Charges in the Supreme Court was unfiled as being an "impermissible

post-submission communication" and improper pleading. In that same letter, the Appellant was informed that his Petition for Writ of Mandamus and/or Extraordinary Relief was denied along with his Application for an Immediate Hearing on the Pending Petition for Writ of Mandamus in an Order dated September 5, 2013. The Appellant was informed that he might make an Application for Reconsideration and he did so on October 1, 2013. Illustrative of the Appellant's serial filings, a September 30, 2013 letter informs the Supreme Court that Appellant prays that his petition does not confuse any of the parties involved. Confusion prevailed over this Court as we were inundated with contact from the Appellant.

In a filing docketed on March 3, 2014, the Attorney General's office filed Commonwealth's Motion to Appoint [PCRA] Counsel for Petitioner Arndt. On August 18, 2014, Attorney [Heather A.] Reiner was appointed to handle Appellant's PCRA petition and was given until September 18, 2014 to file an amended petition or to seek withdraw[al]. By September 2, 2014, the Appellant had already caused a letter to be docketed complaining about Attorney Reiner's representation. On September 15, 2014, Lawyer Reiner requested an extension to file an amended petition. A 45 day extension was granted, on September 16, 2014. On October 31, 2014, counsel for the Appellant filed an amended Motion for Post-Conviction Collateral Relief.

A Hearing on Appellant's petition was set for December 30, 2014. While Appellant and his counsel were present for the Hearing, the matter was continued generally as the Attorney General's office informed us that they were unaware of the Hearing. On January 23, 2015, a Hearing was held on the Appellant's PCRA petition. At the conclusion of that Hearing, having considered all evidence, testimony, and relevant law, this Court denied the Appellant's petition. On February 26, 2015, a Notice of Appeal and request for *in forma pauperis* status were docketed. We granted the *in forma pauperis*

> status and on March 3, 2015, in accordance with Rule 1925(b) of the Rules of Appellate Procedure, the Appellant was Ordered to file a concise statement of matters complained of. On March 24, 2015, we received the Appellant's concise statement of matters complained of.

PCRA court opinion, 7/7/15, at 3-5 (emphasis in original).

On July 7, 2015, the PCRA court filed an opinion explaining its reasons for dismissing appellant's petition. Attorney Reiner has filed a petition to withdraw and "no-merit" letter in accordance with **Turner**/**Finley** practice.[2]

Initially, we note our standard of review:

> Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error. **Commonwealth v. Ceo**, 812 A.2d 1263, 1265 (Pa.Super. 2002) (citation omitted). Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa.Super. 2001) (citation omitted).

**Commonwealth v. Wilson**, 824 A.2d 331, 333 (Pa.Super. 2003) (**en banc**), **appeal denied**, 839 A.2d 352 (Pa. 2003).

We must first determine whether Attorney Reiner has complied with the procedural dictates for PCRA counsel seeking to withdraw under **Turner**/**Finley** and their progeny.

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (**en banc**).

[T]he conditions precedent to an order of court which terminates the representation of PCRA counsel shall be as follows:

1)   As part of an application to withdraw as counsel, PCRA counsel must attach to the application a 'no-merit' letter,

2)   PCRA counsel must, in the 'no-merit' letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims,

3)   PCRA counsel must set forth in the 'no-merit' letter an explanation of why the petitioner's issues are meritless,

4)   PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the 'no-merit' letter, and (ii) a statement advising the PCRA petitioner that, in the event the [] court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*,[Footnote 12] or with the assistance of privately retained counsel;

5)   the court must conduct its own independent review of the record in the light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and

6)   the court must agree with counsel that the petition is meritless.

_____

[Footnote 12] Since the petitioner will essentially be without counsel once original PCRA counsel seeks to withdraw, the Court will, of course, consider any *pro se* argument thereafter submitted by the

> petitioner. ***See generally: Commonwealth v. Baney***, 860 A.2d 127 (Pa.Super. 2004), ***appeal denied***, 583 Pa. 678, 877 A.2d 459 (2005).

***Commonwealth v. Friend***, 896 A.2d 607, 615 (Pa.Super. 2006) (Footnote 11 omitted), abrogated in part by ***Commonwealth v. Pitts***, 981 A.2d 875 (Pa. 2009).[3]

Here, Attorney Reiner has filed an application to withdraw, asserting that she has thoroughly reviewed the trial court record and has concluded that there are no meritorious issues present and that the appeal is wholly frivolous; she has attached a "no-merit" letter, setting forth each issue appellant wishes to have reviewed, and why each is meritless; and she has forwarded to appellant both a copy of the application to withdraw and "no-merit" letter and has advised appellant that he has the right to proceed ***pro se***, retain new counsel, or raise any additional points he deems worthy of this court's consideration. Therefore, we determine that Attorney Reiner has complied with the requirements of ***Turner***/***Finley*** and ***Friend***, ***supra***; and we will proceed to an independent review of the record to decide whether the PCRA petition is, in fact, meritless.

Appellant alleges that trial counsel was ineffective (1) for failing to investigate or hire an expert witness to investigate appellant's computers

---

[3] In a concurring opinion, then-Chief Justice Castille noted in ***Pitts***, ***supra***, that this court is not permitted to craft procedural rules. The supreme court, however, did not overturn this aspect of ***Friend***, ***supra***, as the prerequisites did not apply to the petition in ***Pitts***. ***Commonwealth v. Freeland***, 106 A.3d 768, 774-775 (Pa.Super. 2014) (citation omitted).

that were analyzed and their contents presented as evidence at trial;[4] (2) for failing to object to the admission into evidence of any computer, email, or electronic communications made by appellant for improper chain of custody foundation;[5] (3) for failing to discuss and obtain appellant's consent to a stipulation entered regarding the forensic analysis of the computer and chain of custody;[6] and (4) for failing to object to evidence of prior bad acts, namely, appellant's wife's testimony that appellant disseminated sexually explicit photographs to his wife's nephew.[7]

All of these claims patently lack merit for the reasons discussed in the PCRA court's thorough and comprehensive opinion, filed July 7, 2015. We affirm on the basis of that opinion. The trial court carefully addresses each prong of the ineffectiveness claims and concludes, most importantly, that appellant cannot meet the prejudice prong based on the evidence of his own confession and the victim's testimony. The PCRA court did not err in dismissing appellant's petition. Furthermore, after our independent review

---

[4] **See** PCRA court opinion, 7/7/15 at 7-13 for the PCRA court's thorough and comprehensive analysis on this issue.

[5] **See id.** at 13-18 for the PCRA court's thorough and comprehensive analysis on this issue.

[6] **See id.** at 18-23 for the PCRA court's thorough and comprehensive analysis on this issue.

[7] **See id.** at 23-25 for the PCRA court's thorough and comprehensive analysis on this issue.

of the record, we determine that the petition is meritless, and we will grant

Attorney Reiner's request to withdraw as counsel.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2016



2015 JUL -7 PM 2: 23

DON O'SHELL
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH            :
                         :

     v.                    :         NO. CP-67-CR-0004896-2009

                               :

SHAWN ARNDT,             :
        Defendant/Appellant    :

COUNSEL OF RECORD:

     Christopher J. Schmidt, Esquire           Heather A. Reiner, Esquire
     Counsel for the Appellee                 Counsel for the Appellant

### OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

The Court received a Notice of Appeal, docketed on February 26, 2015, that Shawn Arndt, by and through his counsel, Heather A. Reiner, Esquire, appeals to the Superior Court of Pennsylvania the January 23, 2015 Order, entered by this Court, denying Appellant's Petition for Post-Conviction Relief. Having considered all evidence, testimony, and relevant case law, the Court now issues this Opinion in support of our January 23, 2015 Order.

### I. Procedural History

At the conclusion of his jury trial on August 20, 2010, Mr. Arndt was found guilty of Count 2, Involuntary Deviate Sexual Intercourse by Threat of Forcible Compulsion, 18 Pa. Cons. Stat. Ann. § 3123(a)(2); Count 3, Involuntary Deviate Sexual Intercourse with Person Less than 16, 18 Pa. Cons. Stat. Ann. § 3123(a)(7); Count 8. Indecent Assault, 18 Pa. Cons. Stat. Ann. § 3126(a)(8); Count 9, Promoting Prostitution, 18 Pa. Cons. Stat. Ann. §

I

5902(b)(3); Count 10, Obscenity, 18 Pa. Cons. Stat. Ann. § 5903(c)(1); Count 11, Unlawful Contact with a Minor, 18 Pa. Cons. Stat. Ann. § 6318(a)(1); Count 12, Contact with a Minor for Prostitution, 18 Pa. Cons. Stat. Ann. § 6318(a)(3); Count 13, Contact with a Minor for Purpose of Engaging in Prohibited Activity, 18 Pa. Cons. Stat. Ann. § 6318(a)(4); and Count 14, Contact with a Minor Resulting in Sexual Abuse, 18 Pa. Cons. Stat. Ann. § 6318(a)(5). Pursuant to 42 Pa. Cons. Stat. Ann. § 9795.4, the Court ordered Defendant to undergo a Sexually Violent Predator assessment.

Sentencing was initially scheduled for November 15, 2010; the Commonwealth filed a Praecipe for a Hearing upon receiving the report from the Sexual Offenders Assessment Board and the Court rescheduled Sentencing to coincide with the hearing on January 28, 2011. Defendant filed numerous *pro se* motions prior to Sentencing and made a complaint to the Disciplinary Board regarding his trial counsel, Vincent Monfredo, Esquire. While the Court generally believes it to be in a defendant's best interests to retain his trial counsel through Sentencing, the circumstances of this case, the obvious deterioration of the attorney-client relationship, and the concurrence of Defendant led the Court to Grant Attorney Monfredo's Motion to Withdraw. On January 25, 2011, Joshua Neiderhiser, Esquire, was appointed by separate order of this Court. At Sentencing on January 28, 2011, Defendant requested, and was granted, a continuance in order to retain his own expert witness. This Court thoroughly questioned Defendant on his desire to further continue Sentencing, and Defendant expressly stated that it was his wish that Sentencing be continued. The earliest

2

available date that the Court could reschedule the Sentencing Hearing was for April 1, 2011.

On April 1, 2011, the Court held a Sentencing Hearing and determined Defendant to be a Sexually Violent Predator. Defendant was sentenced on Count 2 to 5-10 years; on Count 3 to 5-10 years, concurrent with Count 2; on Count 8 to 3-6 months, consecutive to Count 2; on Count 9 to 1-2 years, consecutive to Count 8; on Count 10 to 9-18 months, consecutive to Count 9; and Counts 11-14 merged for sentencing purposes. Defendant's aggregate sentence is therefore 7-14 years in a state correctional institution.

Following Sentencing, Defendant filed a Post-Sentence Motion on April 11, 2011. This Court Denied Defendant's Post-Sentence Motion on August 8, 2011 and filed an Opinion in support of the Order. Defendant then filed a Notice of Appeal on August 22, 2011. Defendant was granted leave to file an appeal *in forma pauperis* and was ordered to file a Statement of Matters Complained of on Appeal. The Court was notified on September 27, 2011, that Frank Arcuri, Esquire, had taken over the case and it ordered Attorney Arcuri to file a new Statement of Matters Complained of on Appeal; Defendant's Statement was filed on October 26, 2011. Pursuant to the Pennsylvania Rules of Appellate Procedure, Rule 1925(a), this Court entered an Opinion in support of our actions on November 9, 2011. On July 18, 2012, the Superior Court denied Appellant's appeal and on January 30, 2013, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.[1]

The Appellant filed a *pro se* Post-Conviction Relief Act (PCRA) petition on February

---

[1] We note that *numerous pro se* letters were filed during the period in which the Appellant's case was on appeal.

3

19, 2013.

Central to the recitation of the procedural history of this case are the vigorous *pro se* efforts of the Appellant referenced in our earlier note. If there is any verity to the aphorism that the wheels of justice turn slowly then there is equal merit to the notion that the Appellant's ceaseless efforts to short circuit the system and obtain speedier relief than other petitioners has amounted to confusion and subsequent delay to his detriment. In response to his letter-writing and petition-filing campaign, the Appellant received a letter from our Supreme Court, docketed September 16, 2013, informing him that his Motion to Dismiss All Charges in the Supreme Court was unfiled as being an "impermissible post-submission communication" and improper pleading. In that same letter, the Appellant was informed that his Petition for Writ of Mandamus and/or Extraordinary Relief was denied along with his Application for an Immediate Hearing on the Pending Petition for Writ of Mandamus in an Order dated September 5, 2013. The Appellant was informed that he might make an Application for Reconsideration and he did so on October 1, 2013. Illustrative of the Appellant's serial filings, a September 30, 2013 letter informs the Supreme Court that Appellant prays that his petition does not confuse any of the parties involved. Confusion prevailed over this Court as we were inundated with contact from the Appellant.

In a filing docketed on March 3, 2014, the Attorney General's office filed Commonwealth's Motion to Appoint Post-Conviction Relief Act (PCRA) Counsel for Petitioner Arndt. On August 18, 2014, Attorney Reiner was appointed to handle Appellant's

4

PCRA petition and was given until September 18, 2014 to file an amended petition or to seek withdraw. By September 2, 2014, the Appellant had already caused a letter to be docketed complaining about Attorney Reiner's representation. On September 15, 2014, Lawyer Reiner requested an extension to file an amended petition. A 45 day extension was granted, on September 16, 2014. On October 31, 2014, counsel for the Appellant filed an amended Motion for Post-Conviction Collateral Relief.

A Hearing on Appellant's petition was set for December 30, 2014. While Appellant and his counsel were present for the Hearing, the matter was continued generally as the Attorney General's office informed us that they were unaware of the Hearing. On January 23, 2015, a Hearing was held on the Appellant's PCRA petition. At the conclusion of that Hearing, having considered all evidence, testimony, and relevant law, this Court denied the Appellant's petition. On February 26, 2015, a Notice of Appeal and request for *in forma pauperis* status were docketed. We granted the *in forma pauperis* status and on March 3, 2015, in accordance with Rule 1925(b) of the Rules of Appellate Procedure, the Appellant was Ordered to file a concise statement of matters complained of. On March 24, 2015, we received the Appellant's concise statement of matters complained of.

The Appellant appeals for the following reasons. First, the Appellant believes that we erred in refusing to find trial counsel ineffective for failing to investigate or hire an expert to investigate the Appellant's computers, whose content was presented as evidence at trial. Second, the Appellant thinks it error that we did not find trial counsel ineffective for failing

5

to object to the chain of custody for all communications presented against Appellant that were derived from computer, e-mail, or electronic transmissions. Third, Appellant believes we erred in not finding trial counsel ineffective for failing to garner Appellant's consent for a stipulation entered regarding the forensic analysis of the computer and the chain of custody for that evidence. Fourth, and finally, Appellant finds error in our declining to find trial counsel ineffective for failing to object to the admission of evidence of prior bad acts.

## II.  Matters Complained of on Appeal

### A. Ineffective Assistance of Counsel

Appellant's matters complained of all relate to our refusal to find trial counsel ineffective at the January 23, 2015 Hearing on Appellant's PCRA petition. As such, we begin with a recitation of the relevant law for evaluating the effectiveness of counsel before delving into the distinct matters complained of.

It is stated in *Strickland v. Washington* that, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. 668, 686 (1984). Pennsylvania codified this principle in the Post-Conviction Relief Act, which provides post-conviction relief for "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Pennsylvania's Supreme Court has interpreted this to mean that to show

6

ineffective assistance of counsel, a petitioner must show that:

> (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner.

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citing *Commonwealth v. Collins*, 957 A.2d 237, 244 (Pa. 2008)); See also, *Commonwealth v. Rollins*, 738 A.2d 435, 441 (Pa. 1999) (citations omitted). "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" 983 A.2d 666, 678 (Pa. 2009) (quoting *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (quoting *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998))). In *Commonwealth v. Pierce*, the Pennsylvania Supreme Court wrote that, "[p]rejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." 786 A.2d 203, 213 (Pa. 2001) (citing *Commonwealth v. Kimball*, 724 A.2d 326, 332 (Pa. 1999)); See also, *Commonwealth v. Fletcher*, 986 A.2d 759, 772 (Pa. 2009) (citations omitted). Lastly, "the law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner." 983 A.2d 666, 678 (Pa. 2009) (citing *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000)).

### 1. *Failure to Investigate Computers*

We deal first with the Appellant's contention that trial counsel was ineffective for

7

failing to investigate or cause an expert to analyze the Appellant's computers whose contents were used against the Appellant at trial. We begin our analysis of this claim with a statement of the relevant facts.

At the PCRA Hearing, the Appellant testified that trial counsel, Vincent Monfredo, Esquire, never suggested to the Appellant that the computers should have been independently tested prior to trial. (Notes of PCRA Hearing Testimony (hereinafter: N.P.H.T.), 1/23/15, at 24.) And Appellant admitted that he had no evidence to present at the PCRA Hearing that anyone had tampered with the computers in question. *Id.*, at 38. And, Appellant admitted at the Hearing on his PCRA petition that neither Counts 2 nor 3 for Involuntary Deviate Sexual Intercourse, nor Count 8 for Indecent Assault, nor Count 9 for Promoting Prostitution had anything to do with electronic communications (though he felt he was prejudiced in those counts by the admitted electronic communications). *Id.*, at 37. Counts 11, 12, and 13 for Unlawful Contact with a Minor *did* relate to electronic communications, however, Appellant admitted at trial that he sent pornographic e-mails to his stepson (though, to this day, Appellant does not believe these e-mails were vulgar). (N.P.H.T., 1/23/15, at 30, 37, and Notes of Trial Testimony (N.T.T.), 8/19/10, at 248-249.)

Lawyer Monfredo testified to his belief that most, if not all, of the charges dealt with physical touching and not electronic communications. (N.P.H.T., 1/23/15, at 61.) And further, in Attorney Monfredo's estimation, the electronic communications evidence had little if any value when stacked against testimony from the victim (X.E.), testimony from

8

Officers Emig and Bixler about their interactions with the Appellant, and the Appellant's own testimony. *Id.*, at 61-62. Attorney Monfredo opined to this Court that an analysis of the computers was not that relevant in light of the fact that most of the evidence at trial related to physical touching between the victim and Appellant and *not* about electronic communications. *Id.*, at 69. Trial counsel reiterated to this Court that he viewed the victim's testimony and the Appellant's confession as the crux of the case, *Id.*, at 70, and so Attorney Monfredo could not see how investigating the computers would have been relevant to disputing the most damning evidence, *Id.*, at 72. On cross-examination, Lawyer Monfredo admitted that the computer evidence was used by the Commonwealth to bolster other evidence against the Appellant. *Id.*, at 78. However, to Attorney Monfredo's knowledge, it was only the Appellant who suspected the computers had been tampered with. *Id.*, at 82. In fact, this Court heard from both the Appellant and trial counsel that Appellant testified to the jury that there had potentially been some computer tampering and video evidence was shown in support of that testimony. *Id.*, at 19-20 and 83-84. With these facts in mind, we turn to our three-pronged test for evaluating whether counsel was ineffective.

First, we examine whether the claim underlying the ineffectiveness claim has arguable merit. The overwhelming amount of evidence presented against the Appellant had to do with physical contact between the Appellant and the victim and not the results of analyzing Appellant's computers, so we do not view the underlying claim as having arguable merit. Our analysis would naturally end here as the Appellant has not even cleared the first

9

hurdle. However, that said, if our Superior Court were to agree with the tone and tenor of the cross examination that the computer evidence bolstered the non-computer-based evidence to a sufficient degree to propel the case over a reasonable doubt then there would be arguable merit to the claim and we would proceed to the second prong of our test.

For the second prong, we ask whether trial counsel's actions lacked any reasonable basis whilst bearing in mind that a chosen strategy does not lack a reasonable basis unless the PCRA petitioner proves that an alternative not chosen offered a *substantially* greater chance at success. Here, trial counsel's actions turned upon his belief that the computer evidence was irrelevant to the victim's testimony or the Appellant's confession, which Attorney Monfredo viewed as the central pillars of Commonwealth's case against the Appellant. Ergo, investigations of the computers by counsel or an expert were not done.

The alternative strategy Appellant proposes and wishes had been pursued was to do a computer investigation, which Appellant believes would have diminished the value of the computer-based evidence to bolster the overall case against him. Where this utterly fails is in an appraisal of whether there was a *substantially* greater chance of success for the defense if such a strategy had been effectuated. It cannot be denied that, though the burden in a criminal trial is never on the defendant to prove his innocence, evidence which undercuts evidence offered by the Commonwealth is helpful to the defense. However, would the Appellant's alternative strategy have offered a *substantially* greater potential for undercutting the Commonwealth's strategy? As the Appellant and his counsel alluded to at the PCRA

10

Hearing, the computer-derived evidence was offered to bolster the Commonwealth's case and not to prove it. We do not believe that undercutting bolstering evidence would have offered a potential for success *substantially* greater than Attorney Monfredo's course of avoiding the evidence from the computers.

We cannot say that trial counsel's chosen strategy to, in effect, ignore the computer evidence he viewed as irrelevant lacked a reasonable basis because the Appellant's alternative strategy did not offer a potential for success that was substantially greater. We nonetheless proceed to analyze the third prong of our test.

If, *arguendo*, there was arguable merit to the claim underlying the ineffectiveness claim *and* trial counsel's actions lacked a reasonable basis, the Appellant also needed to show this Court that trial counsel's actions resulted in prejudice to the Appellant. We are reminded that to discern prejudice in this context, we are to evaluate whether there was a reasonable probability of a different outcome if not for counsel's supposed error.

In our own review of the sufficiency of evidence for the direct appeal in this case, we note that we did not have to rely upon the computer evidence to find that sufficient evidence was presented against the Appellant to convict him of the crimes the jury found him guilty of. As such, while we acknowledge that evaluating the sufficiency of evidence is not the same as weighing evidence, we do not believe that the jury would have been swayed in favor of the Appellant by independent computer analysis, which would have only added to the Appellant's testimony and video evidence regarding tampering (if it were even to prove that

11

tampering had occurred, which Appellant did not substantiate for this PCRA).

Appellant could argue that his testimony was only capable of suggesting tampering and an investigation might have revealed actual tampering. This is true, however, Commonwealth's investigation of the computers revealed no tampering beyond attempts to change passwords. (N.P.H.T., 1/23/15, at 24.) And, the jury saw the strongest evidence in terms of a video showing another person accessing the computers. It is impossible to know how the jury weighed this evidence; however, in our view, computer analysis by a defense expert, even if tampering had been revealed, would have been only a bit better than cumulative with the video evidence presented.

It is this Court's view that the outcome of the trial would not have been any different had trial counsel been able to present any evidence of computer tampering to the jury. The testimony of X.E. and the Appellant's own confession would not be effectively undermined by such an admission. Moreover, it must not be forgotten that, ultimately, the Appellant did not present evidence at his PCRA Hearing that the computers in question had been tampered with. This is all academic at best. As with the first two prongs, the Appellant clearly fails to satisfy the third prong of our analysis as well.

Remembering that the law presumes counsel was effective, we believe the Appellant fails at all three prongs of the test for ineffective assistance of counsel. Yet, we have analyzed all three independently in the possible event that the Superior Court feels one, or more, of those prongs has been met. Having completed our evaluation and satisfied ourselves that the

12

Appellant could not have succeeded on any of the individual prongs, let alone together as he must to succeed, we humbly request affirmance as to this matter complained of.

## 2. *Chain of Custody*

The Appellant next complains that we should have found trial counsel ineffective for not objecting to the admission of evidence related to computers, e-mails, and electronic communications from the Appellant due to an allegedly deficient chain of custody. We begin with the facts.

During the PCRA Hearing, Appellant testified that he only received full discovery after the trial and he had made a complaint about Attorney Monfredo to the Disciplinary Board. (N.P.H.T., 1/23/15, at 14.) Tellingly, Lawyer Monfredo testified later in the PCRA Hearing that he did not believe anything was missing from discovery prior to trial and that the Appellant never appeared surprised or confused regarding any evidence admitted at trial. *Id.* ,at 65-66. Nonetheless, Appellant told this Court that while he was able to understand that his cell phone was seized during booking, he was unable to understand how an investigator was able to obtain information from it without a search warrant. *Id.*, at 14-15. The Appellant further testified that while the receipt inventory document left at Appellant's home by investigators only mentioned one Gateway computer tower being seized, the investigator's paperwork, supposedly discovered by the Appellant post-trial, indicates three other computers and a blackberry cellphone were obtained by police. *Id.*, at 15-16. Appellant testified that he formed his belief that the chain of custody was violated for these items after

13

doing research in the prison library. *Id.*, at 17.

Angela Arndt, the Appellant's ex, had taken a computer to one Brian Buchanan of P.C. Experts who extracted evidence in the form of photos and e-mails. (N.P.H.T., 1/23/15, at 18 and N.T.T., 8/19/10, at 178-179.) The stipulation goes on to state that Mr. Buchanan did not alter the contents of the computer and that upon the completion of Mr. Buchanan's review, Ms. Arndt retrieved the computer and delivered it to the police. (N.P.H.T., 1/23/15, at 18.) Appellant opined that Attorney Monfredo should have called Mr. Buchanan to query him about his relationship as a familial friend of Ms. Arndt's family and because Mr. Buchanan carried out his forensic work at his home rather than at P.C. Experts' place of business. *Id.*, at 22-23. Later in the Hearing, Attorney Monfredo stated that the Appellant had provided the defense with a list of witnesses he wished to be called at his trial, but that he did not recall Mr. Buchanan being on that list. *Id.*, at 60.

The Appellant also told this Court that Ms. Arndt's girlfriend was video-recorded on one of the computers at the Appellant's home at a time when Appellant claims no one was to be in the home save Appellant. *Id.*, at 19. Appellant conceded that he testified as much to the jury and that one of twenty DVD surveillance tapes was played for the jury in support of that testimony. *Id.*, at 19-20. Finally, Appellant admitted at the PCRA Hearing that he had no evidence that anyone had tampered with the computers. *Id.*, at 38.

As with the first matter complained of, we begin by examining whether the claim underlying the ineffectiveness claim has arguable merit. Despite the Appellant's

14

remembering of the timeline of this case, we are unpersuaded that the Appellant did not have access to full discovery for the simple facts that Attorney Monfredo believed the defense had full discovery prior to trial *and* Lawyer Monfredo has no memory of the Appellant being surprised at trial. While it is possible that a defendant might not see every scrap of discovery or recognize the importance of a particular piece of discovery prior to trial, it strains credulity to believe that when the all-important day of trial arrives that a man so diligent in his vigilance regarding his case should not be surprised at Commonwealth's introduction of computer evidence supposedly theretofore unknown to the defense. We find that there was no reason why the defense, and therefore the Appellant, would not have been aware of the Commonwealth's possession of the three computers not identified in the inventory slip. It also strikes this Court as odd that an individual would not notice the absence of computers, in addition to the one he admits he knew was seized, from his home. We believe the Appellant knew those additional computers were possessed by investigators.

Ms. Arndt had every right to enter the familial home and remove computers and to turn them over to the authorities. Yes, the Appellant mentioned that property was removed from the home at the behest of Ms. Arndt when no one was to be in the home save the Appellant; however, the Appellant presented no evidence to this Court beyond a bald assertion that a woman who he had lived with in the home was not then allowed in that home. The jury heard that Ms. Arndt did not take one of the computers directly to the authorities; but, rather, Ms. Arndt made a detour to Mr. Buchanan to have him examine the

15

computer. Perhaps Attorney Monfredo should have pushed upon this detail in order to make clear to the jury the potential for evidence tampering, but we view this as, at most, harmless error. The Appellant told the jury that Ms. Arndt's girlfriend had access to at least one of the computers *and* the defense showed the jury one of twenty DVD copies of surveillance footage which clearly depicted Ms. Arndt's girlfriend utilizing one of the computers. The jury was plainly aware of the possibility that the computers had been tampered with.

As for Mr. Buchanan not being called and queried about his familiarity with Ms. Arndt and his examining Appellant's computers in his home rather than his place of business, the Appellant had notice of at least the personal relationship prior to trial. Perhaps evidence of *where* Mr. Buchanan's analysis occurred would have come up at trial had he been called; however, the Appellant has no one to blame but himself for not requesting that Mr. Buchanan be called. Attorney Monfredo has no memory of the Appellant requesting that Mr. Buchanan be called as a witness. Rather, Attorney Monfredo recalls the Appellant wishing Attorney Monfredo to call mostly character witnesses. (N.P.H.T., 1/23/15, at 60.)

In toto, we see absolutely no basis for finding that the claim underlying the ineffectiveness claim has any merit whatsoever. The very nature of challenging the chain of custody of an item is to imply to a factfinder that there was the potential for nefarious harm against the defendant via tampering. That was effectively established by the Appellant testifying and *showing* the jury that someone else had access to the computers in question. The Appellant does not meet the first prong of the test.

16

As to the second prong, did trial counsel's actions lack any reasonable basis? We remember that a chosen strategy does not lack a reasonable basis unless the PCRA petitioner proves that an alternative not chosen offered a *substantially* greater chance at success. We see no reason to be more repetitious that we have already been in this Opinion. The alternate strategy the Appellant wishes Attorney Monfredo had pursued would have been to challenge the chain of custody related to the computers, e-mails, and electronic communications. The Appellant's own testimony and video evidence regarding Ms. Arndt's girlfriend established the *potential* for tampering. However, even if Attorney Monfredo had challenged the chain of custody as Appellant wishes, Appellant admitted at the PCRA Hearing that, to this day, he still has no proof of tampering beyond what he can allege as possible regarding Ms. Arndt's girlfriend. The Appellant does not meet the second prong.

For the third prong, the Appellant needed to convince this Court that trial counsel's actions resulted in prejudice to the Appellant. Prejudice, in this context, means that there was a reasonable probability of a different outcome if not for counsel's supposed error. The supposed error was Attorney Monfredo not challenging the chain of custody. As we have repeated *ad nauseum*, the jury was already aware that the defense alleged tampering and they were not swayed by this assertion. Duplicative assertions in the form of a chain of custody challenge would not, in our opinion, have moved the jury to find that the evidence from the computers was falsified and that, therefore, the Appellant was not guilty of using electronic means to reach out to the victim *and* that Commonwealth's whole case, based mostly on the

17

victim's testimony and Appellant's confession as mentioned *supra*, was a fabrication. As we do not believe there was *any* probability of a different outcome sans counsel's supposed error, we find that the Appellant was not prejudiced and so he fails the third prong of the test as well.

Again, the law presumes counsel was effective. As to Appellant's second matter complained of, we believe the Appellant fails at all three prongs of the test for ineffective assistance of counsel. We therefore pray for affirmance as to this matter complained of.

3. *Appellant's Consent to Stipulation*

For his next matter complained of, the Appellant avers that we should have found trial counsel ineffective for failing to keep Appellant abreast of the potential stipulation regarding forensic analysis or to garner Appellant's consent prior to when that stipulation was entered. The relevant facts bear reciting.

The Appellant told this Court that there was no preparation with Attorney Monfredo other than a day or two before trial for, perhaps, ten minutes. (N.P.H.T., 1/23/15, at 8.) Attorney Monfredo agreed with some of the Appellant's testimony on point in that they may have only met three or four times in person; however, Lawyer Monfredo believes they met for longer than ten minutes before trial. *Id.*, at 63. The reason there were so few face-to-face meetings was because the Appellant was out of the area for much of the time prior to trial and so communication was effectuated through phone calls and e-mails. *Id.*, at 63.

The Appellant stated at his PCRA Hearing that no one ever asked him to enter a

18

stipulation regarding the computers. *Id.*, at 17. As recited earlier, the stipulation was that Ms. Arndt took a computer to Mr. Buchanan for examination prior to turning it over to the authorities and that Mr. Buchanan did not alter the contents of that computer. *Id.*, at 18. Appellant testified to the jury that Ms. Arndt's girlfriend was seen using one of the computers and the jury saw camera footage to that effect as well. *Id.* at 19-20. Yet, Appellant admits that he has no actual proof of tampering at this time. *Id.*, at 38.

Unfortunately, Lawyer Monfredo testified that he cannot recall why he stipulated to Mr. Buchanan's handling of the one computer and the chain of custody for all of the computers. *Id.*, at 60-61. Attorney Monfredo stated that the charges mostly related to physical touching and *not* electronic communications. *Id.*, at 61. In Lawyer Monfredo's opinion, the electronic communications evidence was of little value when stacked against the victim's testimony, Officers Emig and Bixler's testimony, and the Appellant's testimony. *Id.*, at 61-62. Though he downplayed the importance of the computer-derived evidence to the case against the Appellant, Attorney Monfredo seemed to offer no resistance on cross examination to the notion that the computer evidence bolstered Commonwealth's case. *Id.*, at 78. Attorney Monfredo also agreed with PCRA counsel that the stipulation in question was tantamount to agreeing not to get into the fact that non-officers had access to the computers. *Id.*, at 80. Moreover, Attorney Monfredo could not recall talking to the Appellant about the computers stipulation. *Id.*

As before, we begin by testing whether the claim underlying the ineffectiveness claim

19

has arguable merit. The Appellant's unavailability to meet with counsel prior to trial may have affected attorney-client communication; however, there would be little excuse for defense counsel not apprising a defendant of a stipulation that will be entered. One might argue that defendants make strategic decisions, defense counselors make tactical calls, and that a stipulation is more tactical in nature than strategic. In a system that seeks to carefully guard the rights of defendants and colloquies them on important tactical decisions (e.g. the right to testify), we cannot but find that there is arguable merit to the underlying claim that the Appellant should have been involved with deciding whether or not to stipulate to the handling and examination of the computers. Perhaps such a discussion did occur and the Appellant and trial counsel simply do not remember it. More likely, however, is that the Appellant was deprived of input regarding this particular stipulation. Though this Court does not believe, as Appellant does, that the case hinged so strongly on the computer-based evidence, it must be conceded that there is arguable merit to the claim that Appellant's input regarding the stipulation was necessary. The Appellant has met the first prong of the ineffectiveness test as to this matter complained of.

For the second prong, we ask whether trial counsel's actions lacked any reasonable basis. We remember that a chosen strategy does not lack a reasonable basis unless the PCRA petitioner proves that an alternative not chosen offered a *substantially* greater chance at success. Here is where we believe the Appellant stumbles and fails to prove trial counsel ineffective. We agree with trial counsel that the overwhelming and damning evidence in this

20

case came from the victim and the Appellant's confession. A challenge to the forensic analysis of the computers and/or the chain of custody would not have offered a *substantially* greater chance at success because the victim's testimony and the Appellant's confession provided a bulk of evidence so substantial as to overshadow the significance of the computer-derived evidence. Moreover, the defense effectively *did* challenge the forensic analysis and chain of custody of the computers in introducing evidence that someone else, perhaps Ms. Arndt's girlfriend, might have tampered with the computers prior to their being analyzed and turned over to the authorities.

Even if there were a different appraisal of the likelihood of success had the computer analysis and chain of custody been challenged, the Appellant would not succeed. The PCRA Hearing was the time and place for the Appellant to present evidence that tampering had occurred and that, so far as this particular complaint goes, had the desired challenges been made, the evidence pulled from the computers would have been neutered. The Appellant conceded he had no such proof. He would no doubt argue that, per his first matter complained of, it was counsel's ineffectiveness in not having the computers analyzed that resulted in this lack of evidence. This Court would respond with a profound: And? What was preventing the Appellant from bringing forth evidence of tampering *now* some six years after the offenses were charged? The combination of Appellant's lack of evidence of tampering and the fact that we do not view the evidence regarding the computers, even if tampered with, as consequential enough to offer a substantially greater chance of success leaves us to

21

believe that counsel's stipulation did not lack a rational basis. The Appellant fails the second prong.

If our analysis is wrong and counsel's failure to consult with the Appellant is evidence that trial counsel lacked any reasonable basis for the stipulation entered vis-à-vis the computers then we would proceed to the third prong in assessing ineffectiveness of counsel. At the PCRA hearing, the Appellant needed to demonstrate that trial counsel's actions resulted in prejudice to the Appellant. To discern prejudice in this context, we are to evaluate whether there was a reasonable probability of a different outcome if not for counsel's supposed error.

Again, the jury heard evidence of potential tampering when the Appellant testified that Ms. Arndt's girlfriend was seen on video using one of the computers. Such evidence implied that all of the computers were accessible to others and the stipulation would have only furthered that notion. The jury did not have to take the Appellant's word that someone else *might* have accessed the computers; they saw video of it. And even if there had been no stipulation (supposing the Appellant would have refused to enter one after being duly informed of the possibility for one by counsel), the jury had the victim's testimony and the Appellant's confession corroborating one another. We do not believe there was a reasonable probability, under these circumstances, for a different outcome if not for counsel's supposed error. As such, there was no prejudice and Appellant has failed the third prong of the test as to this matter complained of.

23

The law presumes counsel was effective and we do not believe that the Appellant has overcome this presumption. To our mind, Appellant has failed to prove two of the three prongs necessary for a reviewing court to find trial counsel ineffective. We respectfully request affirmance as to this matter complained of.

4. *Prior Bad Acts*

For his final matter complained of, the Appellant complains that trial counsel was ineffective for failing to object to the admission of a prior bad act. Specifically, the Appellant believes that Attorney Monfredo should have objected to Ms. Arndt's testimony that the Appellant transmitted sexually explicit photographs to their "nephew."[2] The relevant facts follow with those facts already well-covered in this opinion omitted.

At the PCRA Hearing, Appellant opined that trial counsel should have objected when Ms. Arndt testified that Appellant sent nude photos of himself in an aroused state to their nephew. (N.P.H.T., 1/23/15, at 38.) Attorney Monfredo then told this Court that he could see where he maybe should have objected to the admission of that testimony and is unsure why he did not. *Id.*, at 69. Lawyer Monfredo went on to imply that it may have been admissible as a prior bad acts exception for the natural chain of events leading up to Ms. Arndt's discovery of the abuse of the victim in this case. *Id.* Moreover, Attorney Monfredo did not believe that the admission of this evidence affected the case at all because the victim's testimony and the

___

[2] The Appellant clarified at the PCRA Hearing that the person in question to whom the Appellant sent the objectionable photos was not actually his, or his wife's, nephew, (N.P.H.T., 1/23/15, at 38), however, for the sake of clarity, we continue to refer to this person as the Appellant's nephew rather than seek to clarify in a manner that might cause more confusion.

23

Appellant's confession were overwhelming. *Id.*, at 70.

First, does the claim underlying the ineffectiveness claim have arguable merit? Attorney Monfredo conceded that he perhaps should have objected to Ms. Arndt's revelation about the Appellant having sent lewd photos to their nephew. However, even if trial counsel had made this objection, "our courts will allow evidence of prior bad acts where the distinct crime or bad act was part of a chain or sequence of events which formed the history of the case and was part of its natural development." *Commonwealth v. Powell*, 956 A.2d 406, 420 (Pa. 2008) (quoting *Commonwealth v. Walker*, 656 A.2d 90, 98 (Pa. 1995) (citations omitted)). While this Court is generally wary of what we view as the overuse of prior bad acts, we would have admitted the prior bad act in question in order to avoid confusing the jury as to the natural history and progression of this case. There would, therefore, be no arguable merit to the underlying claim and the Appellant fails this first prong of the ineffectiveness of counsel test.

For the second prong, we inquire whether trial counsel's actions lacked any reasonable basis while remembering that a chosen strategy does not lack a reasonable basis unless the PCRA petitioner proves that an alternative not chosen offered a *substantially* greater chance at success. The chosen strategy was for trial counsel to not object and the Appellant's proffered alternative strategy was for trial counsel to object to the prior bad act of e-mailing nude photos of Appellant in a sexually aroused state to his barely majority-age nephew. As we have already indicated that we would have overruled such an objection, there

24

is *no* chance, let alone a *substantial* chance, that this alternative strategy would have yielded greater success. Appellant, therefore, fails the second prong of the test as well.

Finally, Appellant also needed to show this Court that trial counsel's actions resulted in prejudice to the Appellant. We are reminded that prejudice, in this context, is found where there was a reasonable probability of a different outcome if not for counsel's supposed error. In the interest of avoiding jury confusion and allowing Commonwealth to tell the story of this case from beginning to end, there was no reasonable probability of a different outcome but for counsel's supposed mistake. Moreover, we agree with trial counsel's assessment that, even if this were error, against the mountain of incriminating evidence against the Appellant supplied by his own words in his confession and by the testimony of the victim, there was no reasonable probability of a different outcome. For these reasons, the Appellant also fails the third prong of the test.

Remembering that the law presumes counsel was effective and the Appellant having failed all three prongs of the test, we do not believe Appellant came close to proving ineffective assistance of counsel for this particular matter complained of. And so, we deferentially ask for affirmance on this matter.

25

## III. Conclusion

Based upon the reasons stated above, this Court respectfully urges affirmance of our January 23, 2015 denial of Appellant's PCRA petition.

BY THE COURT,

DATED: July 7ᵗʰ, 2015

MICHAEL E. BORTNER, JUDGE